UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TAMARA ACKERMAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:24-cv-410-AZ |
| FRANK BISIGNANO, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## **OPINION AND ORDER**

This matter is before the Court on Plaintiff Tamara Ackerman's appeal of the Commissioner of the Social Security Administration's (the "Commissioner") denial of disability benefits.[1] Ackerman argues that the Administrative Law Judge ("ALJ") committed multiple errors in evaluating her application and assessing her mental health impairments and limitations. For the reasons discussed, the Court disagrees with Ackerman's arguments and finds no reversible error by the ALJ. Accordingly, the Court will affirm the ALJ's written decision.

### **Background**

Plaintiff Tamara Ackerman applied for Social Security Disability Insurance benefits on May 31, 2022, claiming that she was disabled as of January 1, 2022. A.R. 10.[2] At the time she was 21 years old. *Id.* at 19. Her claim was denied initially on

---

[1] On November 21, 2024, the parties consented to the jurisdiction of the assigned Magistrate Judge for all purposes pursuant to 28 U.S.C. 636(c). *See* DE 14.

[2] Citations to the Administrative Record, DE 9, are abbreviated to "A.R." throughout.

February 9, 2023, and upon reconsideration on August 14, 2023. *Id.* at 10. She then requested a hearing before an ALJ and on December 14, 2023, a telephonic hearing was held. At the hearing she was represented by a non-attorney representative, who was a retired medical doctor, and a vocational expert likewise testified at the hearing. *Id.* On February 14, 2024, the ALJ issued a written decision denying benefits. *Id.* at 7. Plaintiff timely challenged the ALJ's decision with the Appeals Counsel and on July 30, 2024, the Appeals Counsel denied Plaintiff's Request for Review. *Id.* at 1. Plaintiff then timely filed her complaint for District Court review. *See* DE 1.

Because the Appeals Council denied review, the ALJ's written decision is the final decision for review by the Court. *See* 20 C.F.R. §§ 404.981, 416.1481. In that written decision, the ALJ followed the standard five-step process to determine whether Plaintiff was disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).

At step one, the ALJ reviewed Plaintiff's past work since her alleged onset date and noted that she had earned more than $4,600 during the second quarter of 2022. A.R. 12. But this brief period (a monthly average of $2,138) was an outlier and Plaintiff testified she only worked for a total of four months and stopped because of her impairments. *Id.* at 13. During this time, Plaintiff worked as a hotel housekeeper and since the alleged onset date had sporadically worked part-time as a delivery driver for DoorDash. *Id.* at 19. The ALJ determined that Plaintiff's work, while sufficient to constitute substantial gainful activity for some months, was less than six months and thus found it met the conditions of "an unsuccessful attempt." *Id.* at 13.

2

Because Plaintiff's minimal work in 2022 did not qualify as substantial gainful activity, the ALJ proceeded with the sequential analysis. At step two, the ALJ found Plaintiff had the following severe impairments: major depressive disorder; posttraumatic stress disorder; schizoaffective disorder; anxiety; obesity; bilateral sensorineural hearing loss; and obstructive sleep apnea. A.R. 13. The ALJ further noted that while Plaintiff "testified to seizures … the records show she was intermittently on Topamax, continues to drive without restrictions, and EEG, CT scans, and neurological exams have been within normal limits." A.R. 13-14. While the ALJ did not find these to be a severe impairment, the ALJ considered the seizures "in limiting the claimant to simple, low stress type work and considered the reported seizures in limiting her environmental exposure" as reflected in the RFC quoted and summarized below. A.R. at 14.

At step three, the ALJ found that Plaintiff's impairments or the combination of impairments did not meet or equal any applicable listing. A.R. 14. In particular, the ALJ assessed Listings 2.10, 12.04, 12.06 and 12.15 and considered the impact of Plaintiff's obesity. *Id.* In assessing Plaintiff's functionality, the ALJ recognized that the state agency found Plaintiff to have moderate limitations in concentration, persistence and pace. The ALJ noted that Plaintiff testified that she could not concentrate for longer than ten minutes before requiring a break and that she had difficulty completing tasks and maintaining a work schedule. But the ALJ contrasted that testimony with other testimony by Plaintiff that she was able to "read, play games, use the internet and handle her own care." A.R. 15.

3

Before proceeding to step four, the ALJ determined Plaintiff's Residual Functional Capacity ("RFC"). The ALJ found Plaintiff had an RFC:

> [T]o perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except no climbing ladders, ropes, or scaffolds; occasional balancing; frequently climbing ramps and stairs; frequently stooping, kneeling crouching, and crawling; avoid concentrated exposure to hazards, such as unprotected heights and unguarded moving mechanical parts; avoid concentrated exposure to dust, odors, fumes, and pulmonary irritants; understand, remember, and carry out simple instructions and tasks; cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas; deal with occasional changes in a routine work setting; occasional interactions with supervisors and coworkers, and no interaction with the public but contact with supervisors still includes what is necessary for general instruction, task completion, or training.

A.R. 15-16. The ALJ then explained why in her view the evidence did not support additional limitations. The ALJ noted that Plaintiff failed to follow up with medical providers, and other medical records showed "normal" findings as to physical ability. The ALJ noted that Plaintiff visits with friends, attends church and works part time for DoorDash as a delivery driver, all of which contravened Plaintiff's claims that she did not drive or is unable to interact with others outside of her home. The ALJ noted Plaintiff's suicide attempts but likewise noted they did not result in inpatient treatment. With regard to Plaintiff's seizures which allegedly began in July 2022 but were officially not diagnosed, the ALJ found them to be somewhat controlled and that Plaintiff drove despite the seizures, undercutting the claim that they were disabling. *See* A.R. 17-19.

The ALJ further reviewed the limitations suggested by the state agency doctors. The two state agency doctors opined the following mental residual functioning capacity:

> To the extent the claimant is physically capable, the totality of evidence in file suggests that the claimant is able to: understand, carry out and remember simple instructions; able to make judgments commensurate with functions of simple, repetitive tasks; able to respond appropriately to brief supervision and interactions with coworkers and work situations; able to deal with routine changes in a work setting.

A.R. 107 (Ken Lovko in January 2022); A.R. 130 (Amy S. Johnson in July 2023). The ALJ considered the opinions but found them "not persuasive" as to limiting the Plaintiff to "brief supervision and interactions with coworkers and work situations" because those "limits are not in vocationally defined terms and the state agency did not provide for any explanation on what those terms meant." A.R. 18. The ALJ further discounted them because the records reflected that Plaintiff "was often noted to have a normal mood and affect; she also admitted going to church, spending time with friends, and working at Door Dash, which involves interactions with others." *Id*. The ALJ found the remainder of the opinions persuasive and adopted them in the RFC. *Id*. Lastly, the ALJ considered a July 2022 opinion from a Dr. Suzenne, finding it "not entirely persuasive" as to prohibiting Plaintiff from driving, but persuasive as to avoiding hazards such as ladders and mechanical parts. *Id.*

At step four, the ALJ found Plaintiff could perform her past relevant work experience as a housekeeping cleaner given her RFC. A.R. 19. The ALJ further credited the Vocational Expert's testimony and found that there were other

representative jobs the claimant could perform including, routing clerk, marker, and router, providing an "alternative" step five finding. *Id.* Accordingly, Plaintiff was found to not be disabled and her application for benefits was denied.

## Discussion

The Social Security Act authorizes judicial review of a final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). A court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence, or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019) (citation omitted). "The threshold for this standard 'is not high.'" *Brace v. Saul*, 970 F.3d 818, 821 (7th Cir. 2020) (quoting *Biestek*, 587 U.S. at 103). "Substantial evidence in this context means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting marks omitted).

Given this deferential level of review of agency decisions, the Court reviews the administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question is not whether the claimant is in fact disabled, but whether

6

the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010)).

At the same time, the Court is not a rubber stamp. An ALJ must articulate their analysis of the evidence in order to allow the reviewing court to trace the path of their reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). An ALJ "has a basic obligation to develop a full and fair record and must build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2019) (citations omitted). "An ALJ need not specifically address every piece of evidence," *O'Connor-Spinner*, 627 F.3d at 618, but they likewise cannot ignore entire lines of evidence that undercut or contravene their conclusions. "Remand is necessary when it is unclear if the ALJ examined the full range of medical evidence, or if the court cannot trace the ALJ's path of reasoning." *Wolford v. Kijakazi*, 658 F. Supp. 3d 664, 668 (N.D. Ind. 2023) (cleaned up). The Court "cannot uphold an administrative determination that failed to explain the outcome adequately." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) (citing *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010)).

Plaintiff raises three arguments on appeal. First, she argues that the ALJ failed to incorporate all necessary limitations into the RFC by failing to account for enough Concentration, Persistence and Pace (CPP) limitations. Second, she argues

7

that the ALJ ignored an entire line of evidence when evaluating her claim because the ALJ did not list bipolar disorder as a severe impairment. Third, she argues that the ALJ's credibility finding and assessment of her symptoms generally were unsupported by substantial evidence because in her view, the ALJ relied too heavily on a lack of objective medical evidence and overemphasized daily activities. The Court will address each argument in turn.

### A. The Adequacy of the ALJ's Concentration, Persistence and Pace Limitations in the RFC.

As recounted above, the ALJ found at step three found that Plaintiff had "moderate limitations" in her "ability to concentrate, persist, or maintain pace." A.R. 15. In Social Security parlance, this area of functioning is commonly referred to as "CPP." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). This finding was generally consistent with what had been found previously by the state agency at the initial level. A.R. 15; *accord* A.R. 106, 129, (state agency RFC determinations noting Plaintiff was moderately limited in certain CPP areas) *and id.* at 107 and 130 (narrative portion of state agency mental RFC). Plaintiff does not challenge the step three finding but instead states that the ALJ failed to "translate" Plaintiff's moderate CPP limitations into the RFC and by extension, the hypothetical the ALJ posed to the vocational expert. DE 21 at 8.

The first issue to address is Plaintiff's claim that "the ALJ placed no CPP limitations in the RFC." DE 21 at 8. That is simply not true and misstates the ALJ's written decision. The RFC specifically states that Plaintiff could "understand, remember, and carry out simple instructions and tasks" and "deal with occasional

8

changes in a routine work setting" but "cannot perform work requiring a specific production rate such as assembly line work or work that requires hourly quotas." A.R. 16. These are CPP limitations within the RFC which are mostly consistent with what the state agency found, although the ALJ found some of those opinions to be inconsistent with the record evidence, as discussed above with regard to driving and Plaintiff's interactions with others. *See* A.R. 18-19.

While it is true that Plaintiff testified that "she has limitations in concentrating generally, concentrating longer than ten minutes before requiring a break, completing tasks, and maintaining a regular work schedule," A.R. 15, the ALJ found this testimony was contradicted by testimony that "she is also able to read, play games, use the internet, and handle her own care" as well as a lack of medical records reflecting distractibility or lack of engagement during therapy. *Id.* Plaintiff does not make an argument that this finding was unsupported; she simply disagrees with it. That is not a basis to reverse the ALJ. *Brenda L. v. Saul*, 392 F. Supp. 3d 858, 868 (N.D. Ill. 2019) ("It is for the ALJ to weigh the evidence and to make judgments about which evidence is most persuasive.") (citing *Farrell v. Sullivan*, 878 F.2d 985, 989 (7th Cir. 1989)); *Id.* at 869 ("[N]o matter how a court explains the ALJ's proper role in making credibility judgments, all are agreed that if the ALJ's credibility finding is supported by substantial evidence, the court may not engage in second-guessing.").

Plaintiff then posits that the ALJ did not include any limitation "on the nature and intensity or quality of [Plaintiff's] expected work interactions with others." DE 21 at 15. But Plaintiff fails to point to anything in the record that would support such

9

additional limitations beyond what Plaintiff's counsel "imagine[s]" might occur. *Id.* And again, the RFC limited Plaintiff to "occasional interactions with supervisors and coworkers, and no interaction with the public but contact with supervisors still includes what is necessary for general instruction, task completion, or training," A.R. 16, which reflects limitations on the nature and quality of interactions. Plaintiff does not suggest that the ALJ was required to adopt the state agency's RFC terminology that Plaintiff should be limited to interactions that were "brief" in time as opposed to occurring "occasionally." *Id.* As the ALJ explained in rejecting that portion of the state agency findings, "[]limits to brief interactions are not persuasive because the limits are not in vocationally defined terms and the state agency did not provide for any explanation on what those terms meant." A.R. 18.

Plaintiff cites *Yurt v. Colvin*, 758 F.3d 850 (7th Cir. 2014) in support of her argument that the ALJ's CPP limitations were faulty as a matter of law and require remand. DE 21 at 12-13. This mischaracterizes the holding in *Yurt* and its implication for Plaintiff here. In *Yurt,* the primary issue was that the hypothetical posed to the vocational expert did not track what had been found at the RFC, so the Commissioner's reliance on CPP limitations in the RFC could not save the ALJ's decision. *Yurt*, 758 F.3d at 858 ("The first and most obvious problem with the Commissioner's argument is that it focuses entirely on the ALJ's mental RFC when it is in fact the *hypothetical* she posed to the VE that Yurt attacks."). Plaintiff does not point to any incongruence between the RFC and the hypothetical, she simply disagrees with how the ALJ weighed the evidence when developing her RFC. *See*

10

*Cihlar v. Berryhill*, 706 F. App'x 881, 883 (7th Cir. 2017) ("[T]he ALJ need incorporate into the questions for the expert only those limitations that the ALJ accepted as credible.") (citing *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009).

Here, unlike in other cases cited by Plaintiff, the ALJ did not only account for moderate CPP limitations by limiting Plaintiff to unskilled work. *See O'Connor-Spinner*, 627 F.3d at 620 (rejecting "the broad proposition that an ALJ may account generally for moderate limitations on concentration, persistence or pace by restricting the hypothetical to unskilled work."). As the Seventh Circuit has said elsewhere, "[a] 'moderate limitation' is defined by regulation to mean that functioning in that area is 'fair.' Fair in ordinary usage does not mean 'bad' or 'inadequate.' So a 'moderate' limitation in performing at a consistent pace seems consistent with the ability to perform simple, repetitive tasks at a consistent pace." *Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir. 2021) (cleaned up). And "[n]o rule requires that the ALJ use a particular wording regarding pace limitations in the hypothetical if alternative phrasing adequately accounts for the claimant's limitations," *Cihlar*, 706 F. App'x at 883 (citing *O'Connor-Spinner*, 627 F.3d at 619), so long as the ALJ "considered all limitations supported by record evidence." *Jozefyk v. Berryhill*, 923 F.3d 492, 497 (7th Cir. 2019). Here, the ALJ's RFC did just that with specific limitations regarding simple instructions, no specific production rates or quotas, and occasional changes in a routine. *See* A.R. 16.

**B. The ALJ's Omission of Bipolar Disorder as a Separate Severe Impairment.**

Plaintiff next argues that the ALJ ignored an entire line of evidence when the ALJ failed to note that Plaintiff's schizoaffective disorder (which was found to be a severe impairment) was diagnosed as being "bipolar type" or failed to list "Bipolar Disorder" as a separate severe impairment at step two. The Court finds these arguments unpersuasive for several reasons

First, Plaintiff's argument seems to be mostly one of semantics. While neither the ALJ nor the Court are medical professionals, the medical records make numerous references to "schizoaffective disorder, Bipolar type" (A.R. 537 ("Her diagnosis is Schizoaffective Disorder, Bipolar Type and her prognosis is fair."); *id.* at 537- 796 (Four County Counseling records from 2021-2022). And the ALJ unquestionably found Plaintiff to have numerous mental health severe impairments: major depressive disorder, posttraumatic stress disorder; anxiety, and ***schizoaffective disorder***, albeit without noting it was "Bipolar Type." A.R. 13. Likewise, the state agency findings (which the ALJ reviewed and referenced) referred to Plaintiff's "impairment diagnosis" as being "Depressive, Bipolar and Related disorders" and "Anxiety and Obsessive-Compulsive Disorders." A.R. 102. It is thus clear that the ALJ was adequately apprised of Plaintiff's underlying medical conditions and considered them.

Second, Plaintiff does not say what additional limitations should have been included on account of the bipolar disorder which were not imposed vis-à-vis her schizoaffective disorder severe impairment or her other mental health impairments.

12

Instead, Plaintiff says that "the harm incurred by omitting bipolar from consideration is addressed elsewhere in this brief" without citation to what Plaintiff's counsel is referring to. *See* DE 21 at 12. The Court is left guessing as to what Plaintiff means.

The Court finds this situation akin to the one the Seventh Circuit addressed in *Crowell v. Kijakazi*, 72 F.4th 810, 818–19 (7th Cir. 2023). There, the plaintiff "contend[ed] that the administrative law judge erred by failing to include bi-polar disorder in step two of the analysis." *Crowell*, 72 F. 4th at 818. As the court said, "[i]f this was error, it was harmless." *Id.* Here, like in *Crowell*, the ALJ's written decision makes clear that she considered numerous psychological evaluations and mental health records submitted by Plaintiff which referenced her schizoaffective disorder being "bipolar type" and addressed them. A.R. 18-19. These include records that refer to both Plaintiff's bipolar disorder and "schizoaffective disorder, bipolar type." And while Plaintiff submits in briefing, with a citation to Wikipedia, that bipolar disorder "is not just another name for other mental health conditions," DE 31 at 1, this argument misses the mark because it ignores the substance of the ALJ's decision. "In short, the administrative law judge did not ignore [Ackerman's] bipolar disorder" and its symptoms were considered by the ALJ when crafting the RFC. *Crowell*, 72 F4th at 819.

Nestled within her arguments concerning her bipolar disorder are two additional half-baked arguments: (1) that the ALJ erred by not considering "[t]he extent to which Plaintiff has never really successfully worked;" and (2) there was something impermissible about Plaintiff being represented at her hearing by a

13

medical doctor as a non-attorney representative. DE 21 at 12. First, the Commissioner expressly allows qualified non-attorney representatives to represent claimants at the administrative level. 20 C.F.R. § 404.1705. And Plaintiff has not raised any argument that the ALJ failed to obtain a valid waiver of counsel. *See generally Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (explaining the contours of what ALJ's must do to obtain valid waivers of counsel). Second, on the substance, Plaintiff argues that, despite the fact that "this claimant and representative had not raised it," Plaintiff had multiple jobs for short periods of time while still being relatively young, and so the "alleged onset date really was likely properly [*sic*] earlier in this case." DE 21 at 16. This cursory argument seeks to have the Court to reweigh the evidence and arrive at a different conclusion from the ALJ based on nothing more than speculation. That is impermissible. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) ("We will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it."). Here, Plaintiff does not claim there is not substantial evidence supporting the alleged onset date and offers no support that having a non-attorney representative, which is commonplace in such proceedings, was improper.

**C. The ALJ's Assessment of Plaintiff's Symptoms and Their Limitations.**

Plaintiff's final argument is that the ALJ's assessment of the intensity and persistence of her symptoms was inadequate. In doing so, Plaintiff correctly notes that the ALJ's job at this stage is not strictly to assess a claimant's "credibility" because the "subjective symptom evaluation is not an examination of an individual's

14

character." *See* SSR 16-3p (S.S.A. Mar. 16, 2016), 2016 WL 1119029. Plaintiff also correctly notes that the ALJ accurately described the required "two-step process" of assessing first whether there is medically determinable impairment that could reasonably expected to produce Plaintiff's symptoms followed by an evaluation of the intensity, persistence and limiting effects of those symptom. *See* A.R. 16. But beyond that, Plaintiff's multi-point argument is without merit.

Plaintiff quibbles with how the ALJ phrased this part of the written decision, criticizing the ALJ as "play[ing] a sly rhetorical etiology game." DE 21 at 18. Here's what the ALJ wrote:

> After careful consideration of the evidence, the undersigned finds the claimant did have underlying medically determinable impairments that could reasonably cause some symptomatology. However, the pivotal question is not whether such symptoms exist, but whether those symptoms occur with such frequency, duration, or severity as to the reduce the claimant's residual functional capacity, as set forth above, or to preclude all work activity on a continuing and regular basis.

A.R. 16. This is an accurate summary of the two-step process even if it does not track all of the precise language used in the applicable regulations. Plaintiff's argument is thus one of semantics and the ALJ's word choice. But that fails because "[t]he ALJ need not use any 'magic words' in formulating a person's residual functional capacity." *Lothridge*, 984 F.3d at 1233 (quoting *Crump*, 932 F.3d at 570). Instead, the focus is on the substance of the analysis and here (as discussed *infra* in this section) the ALJ did a reasonable job comparing Plaintiffs' claimed limitations with what the objective medical evidence showed and partially discounted Plaintiff's testimony.

15

Plaintiff builds off her semantics argument to imply that this is a case that triggered a duty by the ALJ to develop the record further and obtain more evidence. DE 21 at 18. But again, Plaintiff does not actually point to any finding by the ALJ that the record was incomplete or suggest what records should have been obtained. Instead, Plaintiff simply speculates that further "record development … would have (likely favorably) affected the analysis." *Id.* at 19. That is not enough. *Binion v. Shalala,* 13 F.3d 243, 246 (7th Cir. 1994) ("Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand."); *accord Orienti v. Astrue,* 958 F. Supp. 2d 961, 974 (N.D. Ill. 2013).

Finally, Plaintiff argues that the ALJ overly relied on a lack of "objective" medical evidence and her daily activities in order to discount the limitations she claimed she had. This is the substantive component of Plaintiff's third argument. Plaintiff claims that the ALJ's reliance of the fact she attends church, spends time with friends, and worked part-time as delivery driver for DoorDash were impermissible. First, Plaintiff's suggestion that the ALJ's singular mention of Plaintiff's church attendance amounts to a First Amendment violation is unsupported hyperbole. *See* DE 21 at 24 ("Plaintiff's rights under the *First Amendment to the Constitution* have been violated.") (emphasis in original).

Second, with regard to part time work at DoorDash, Plaintiff testified that was work performed "just so I can pay—try to pay the bills." A.R. 74. But that is the function of most people's jobs. The ALJ did not find that DoorDash was past relevant work that Plaintiff could perform on a full-time basis, as Plaintiff seems to imply. DE

16

21 at 24 ("The ALJ's repeated and thoroughgoing references to the significance of Door Dash suggest that not getting kick off a gig app indicates ability to work—a job that she has been able to maintain."). As the ALJ plainly stated in the written decision, that part-time work "involves interactions with others" and driving, and it was used by the ALJ to discount Plaintiff's claims to being unable to drive, interact with people, or leave her home. A.R. 18.

In sum, despite all of these criticisms of the ALJ's decision, nowhere does Plaintiff point to any other underlying evidence (beyond her own testimony), such as medical opinion evidence suggesting greater limitations, that she says the ALJ ignored.[3] Without that, there is no error. *See Gedatus*, 994 F.3d at 904 ("A fundamental problem is she offered no opinion from any doctor to set sitting limits, or any other limits, greater than those the ALJ set.") *accord Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) ("There is no error when there is no doctor's opinion contained in the record [that] indicated greater limitations than those found by the ALJ.") (alterations in original). Instead, it appears that Plaintiff simply disagrees with the ALJ's conclusion. But that is not a basis to remand because "[s]he bears the burden to prove she is disabled by producing medical evidence." *Id.* at 905.

---

[3] As discussed throughout, the ALJ did not find the state agency opinion that Plaintiff should be limited to "brief supervision and interactions with coworkers" persuasive. But Plaintiff does not argue that the ALJ should have adopted this finding or that it would have made any difference in the outcome. As discussed, the ALJ appropriately found this aspect of the state agency opinion not persuasive because "the limits are not in vocationally defined terms and the state agency did not provide for any explanation on what those meant" *and* because Plaintiffs' medical records and testimony of daily activities conflicted with this limitation. A.R. 18. On top of that, the ALJ's RFC limited Plaintiff to only "occasional interactions with supervisors and coworkers, and no interaction with the public." *Id.*

## Conclusion

For the reasons discussed, the decision of the Commissioner is **AFFIRMED**, and the Clerk of Court is **DIRECTED** to enter judgment in favor of the Defendant.

SO ORDERED this 24th day of September 2025.

/s/ *Abizer Zanzi*
MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT